# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No.  12-cr-282 (RWR) |
| | : | |
| GIVON R. CRUMP, | : | **UNDER SEAL** |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE UNDER USSG § 5K1.1 AND MEMORANDUM IN AID OF SENTENCING

The United States of America, by its attorney, the United States Attorney for the District of Columbia, hereby submits this motion for downward departure, pursuant to section 5K1.1 of the United States Sentencing Guidelines ("USSG" or "Guidelines") and memorandum in aid of sentencing concerning the defendant, Givon Crump.

## SUMMARY

On January 23, 2013, the defendant entered into a cooperation agreement with the Government and pled guilty to conspiracy to distribute and possess with intent to distribute less than 50 kilograms of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D); and conspiracy to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce with property that involved the proceeds of a specified unlawful activity, that is the distribution of a controlled substance, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of a specified unlawful activity, in violation of 18 U.S.C. § 1956(h).

The Probation Officer calculated the defendant's total offense level as 15.  The Government agrees that this offense level is accurate under the current Guidelines.  As discussed

in further detail below, the Government recommends that the defendant's base offense for Count One be reduced by two levels due to the proposed amendment to the drug quantity table. The defendant's adjusted offense level will be 13 if the Court accepts the Government's recommendation.

The defendant has provided substantial assistance in the investigation and prosecution of two of his co-conspirators. As a result, the Government moves for a four-level departure pursuant to USSG § 5K1.1. The resulting total offense level will be 9 if the Court grants the motion. The defendant's Criminal History Category is I. His corresponding Guidelines range will be four to ten months.

The Government requests that the Court impose a sentence of probation for 30 months with the following conditions: (1) confine the defendant to the Bureau of Prisons for a total of 5 days from 9:00 AM to 5:00 PM; (2) require the defendant to obtain sufficient credits to complete his college degree; (3) require the defendant to obtain gainful employment unless attending school; and (4) require the defendant to perform 250 hours of community service.

## I. FACTUAL BACKGROUND

Between approximately on or about October 2010, to approximately on or about August 2011, within the District of Columbia and elsewhere, the defendant conspired to distribute and possess with intent to distribute less than 50 kilograms of marijuana. In the fall of 2010, the defendant was a student at Fresno State University in Fresno, California. He attended Fresno State on a basketball scholarship, but was ineligible to play due to NCAA transfer rules. The defendant began purchasing marijuana from Nathan Young and causing the marijuana to be sent to Brandon Gopaul, also known as "Brooklyn."

The defendant has known Nathan Young since childhood. The defendant met Brandon Gopaul in the District of Columbia during the summer of 2010. Brandon Gopaul asked the defendant if the defendant would purchase marijuana from California for him. The defendant knew that Nathan Young had access to marijuana in Chico, California.

Brandon Gopaul provided the money used to purchase the marijuana by making cash deposits, within the District of Columbia and Maryland, into the defendant's bank accounts. The defendant then withdrew the cash from bank branches in Fresno, California, and deposited the cash into Nathan Young's bank account. On or about November 29, 2010, Brandon Gopaul deposited $6,800 in cash proceeds obtained from the drug trafficking conspiracy into the defendant's Citibank account number XXXXXXX1892. This deposit occurred at a Citibank branch within the District of Columbia. On or about November 29, 2010, the defendant withdrew $6,500 in cash from a Citibank branch in Fresno, California. The defendant used those funds to purchase marijuana from Nathan Young for shipment to Brandon Gopaul.

Brandon Gopaul told the defendant the amount of marijuana to ship and provided various addresses and fictitious names in the District of Columbia for the marijuana shipments to be sent. The defendant in turn provided this information to Nathan Young who then shipped the marijuana. Between October 2010, and January 2011, approximately 15 shipments of marijuana were sent to the District of Columbia in furtherance of the conspiracy.

In December 2010, after learning that Nathan Young would soon be leaving the Chico, California area, the defendant travelled to Chico to meet with Nathan Young. Nathan Young instructed the defendant on how to shrink wrap the marijuana and package it for delivery by mail. The defendant also met with "Mark," the person who supplied marijuana to Nathan Young. The defendant began dealing directly with "Mark." The defendant travelled to Chico,

3

California, on approximately seven occasions to purchase marijuana from "Mark." The defendant provided cash to "Mark" that had been deposited into the defendant's account by Brandon Gopaul. In return for the cash, "Mark" provided marijuana to the defendant, who then shipped it to a District of Columbia address provided by Brandon Gopaul. The defendant used fictitious names for the sender when mailing the marijuana.

On approximately three to five occasions, the defendant obtained marijuana from "A.J." in the Pasadena, California area. On or about August 21, 2011, the defendant mailed a package containing approximately three pounds of marijuana that he had obtained from "A.J." to the District of Columbia for delivery to Brandon Gopaul.

Throughout the course of the conspiracy, Brandon Gopaul deposited the proceeds from illegal narcotics activity into the defendant's accounts, and the defendant used those funds to purchase additional marijuana. The marijuana shipments in furtherance of the conspiracy ranged from one to three pounds. The defendant received approximately $700 to $900 per pound for each shipment. The proceeds obtained from the drug conspiracy and the property involved in the money laundering conspiracy were at least $101,400.

## II. THE APPLICABLE ADVISORY GUIDELINES RANGE

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a sentencing determination. Gall v. United States, 552 U.S. 38, 49 (2007). While the Court must ultimately "impose a sentence sufficient, but not greater than necessary to comply with the" requirements listed in 18 U.S.C. § 3553(a)(2), the Guidelines range is a factor that must be considered in the analysis. 18 U.S.C. § 3553(a)(4).

## Proposed Amendment to the Drug Quantity Table

On January 17, 2014, the United States Sentencing Commission published a proposed amendment to the Drug Quantity Table of the Sentencing Guidelines (USSG § 2D1.1(c)) for those convicted of drug-trafficking offenses. The Sentencing Commission's proposed amendment to the Table would lower by two levels the base offense levels associated with various drug quantities involved in trafficking offenses. Consistent with the proposed amendment, it is the policy of the Department of Justice that the base offense levels for drug offenses should be reduced by two levels.

After making an individualized assessment of all of the aggravating and mitigating circumstances in this case, the Government recommends a two-level downward variance to the defendant's base offense level, provided that the defendant agrees, **on the record at the sentencing hearing**, that should the Court apply this two-level downward variance to the defendant's base offense level, the defendant will not later seek a reduced sentence, pursuant to 18 U.S.C. § 3582(c), in the event that the proposed amendment is adopted and made retroactive by the Sentencing Commission. This is to ensure that the defendant does not receive a two-level downward variance twice based on the proposed amendment: that is, once before the proposed amendment is passed, and again after the proposed amendment is passed.

## Guidelines Range for Count One

| | |
|---|---|
| Base Offense Level USSG § 2D1.1(a)(5)&(c)(11) | 18 |
| Variance Based on Proposed Amendment to Drug Quantity Table | -2 |
| Specific Offense Characteristics | -2 |

USSG § 2D1.1(b)(16)[1]

Adjusted Offense Level                   14

### Guidelines Range for Count Two

Base Offense Level                       14
USSG § 2S1.1(a)(1)

Specific Offense Characteristics         +2
USSG § 2S1.1(b)(2)(B)

Adjusted Offense Level                   16

### Grouping of Counts

USSG § 2S1.1., comment. n. 6     Counts One and Two are grouped pursuant to
                                 USSG § 3D1.2(c)

USSG § 3D1.3(a)                          16
Highest Offense Level of Counts
In Group

### Acceptance of Responsibility

USSG § 3E1.1(a)                          -2

USSG § 3E1.1(b)[2]                       -1

Adjusted Offense Level                   13

### Substantial Assistance to Authorities

The Government moves for a four-level departure, pursuant to USSG § 5K1.1, based on

the defendant's substantial assistance in the investigation and prosecution of his co-conspirators.

The defendant was the first conspirator to plead guilty.  He was debriefed several times.

---

[1] The defendant meets the requirements of the "Limitation on Applicability of Statutory Minimum in Certain Cases" provisions in USSG § 5C1.2(a).
[2] The Government has filed a motion for an additional one-level decrease pursuant to USSG § 3E1.1(b).

He identified Brandon Gopaul as a person to whom he shipped marijuana. He also identified Nathan Young as his main supplier in California. The defendant explained the process for purchasing and shipping the drugs, and how funds were transferred to him. His assistance was essential to the prosecution of Brandon Gopaul and Nathan Young. Nathan Young has pled guilty to the same charges as the defendant. Brandon Gopaul is scheduled to plead guilty to the same charges on July 21, 2014.

If the Court grants the Government's motion, the defendant's resulting adjusted offense level will be nine. The defendant's Criminal History is Category I. The resulting Guidelines range is 4-10 months and within Zone B of the Sentencing Table.

## III. OTHER SENTENCING FACTORS

### The Nature and Circumstances of the Offenses

The defendant's offenses are serious violations. The defendant engaged in the interstate shipment of illegal narcotics. The narcotics were sent to addresses of people who were not involved in the conspiracy. If law enforcement had tracked the defendant's shipments, agents may have executed search warrants at the residences of innocent and unsuspecting individuals. This could have endangered both the individuals and law enforcement.

In one instance, the defendant shipped marijuana to someone he knew. The defendant told this person that the shipment contained the person's driver license which had been accidentally left with the defendant. The defendant also said that he was shipping shirts to be given to a mutual acquaintance. The person picked up the package from the defendant at a post office in the District of Columbia. The package was opened at the post office, and two pounds of marijuana were discovered inside the package. The person picking up the package was

fortunately not arrested. The person did have to hire an attorney and was traumatized by the incident.

The defendant used the banking system to facilitate his narcotics distribution. Banks must devote extensive resources to combat the flow of dirty money. Ultimately, consumers are forced to bear the costs of banks' anti-money laundering programs.

## The History and Characteristics of the Defendant

The defendant is an unemployed 24 year-old who has attended four colleges, but has not earned a degree. It is evident that basketball is his focus. The defendant does not appear to have exercised much responsibility for himself. He has never held gainful employment or filed an income tax return. He has less than one dollar in both of his checking accounts. The defendant does not claim to have any ambitions other than basketball. These circumstances suggest that the defendant lacks maturity and is not well equipped to provide for himself beyond a potential basketball career.

The defendant voluntarily met with law enforcement agents on three occasions prior to agreeing to the plea. As discussed above, the defendant provided substantial assistance in the investigation and prosecution of two co-conspirators. The defendant has accepted full responsibility for his conduct and appears to be remorseful.

## The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment; to Afford Adequate Deterrence; to Protect the Public From Further Crimes of the Defendant; and to Provide the Defendant with Needed Educational or Vocational Training

A sentence of 30 months probation with the condition that the defendant serve five days in prison reflects the seriousness of the defendant's offenses and provides just punishment. The defendant engaged in an interstate drug and money laundering conspiracy. He involved innocent people in his conspiracy. He deserves to spend some time in prison and have an extended period

8

of probation.  Probation is a significant restraint on liberty.  See United States v. Knights, 534

U.S. 112, 119 (2001).  However, the defendant's age and the non-violent nature of his criminal

activity militate against a sentence of imprisonment.

The requirement that the defendant spend five days in prison will act as a significant

deterrent to future criminal activity from the defendant.  It will permit the defendant to reflect on

his actions.  It will also serve as a general deterrent to others, especially those in the defendant's

peer group.

A probationary sentence with the conditions that the defendant obtain sufficient credits to

complete his college degree and obtain gainful employment unless attending school will provide

structure for the defendant.  The defendant will benefit from knowing that someone is

monitoring him and that there will be consequences if he does not comply with these conditions.

By obtaining a college degree and a job, the defendant can begin to have future options beyond a

basketball career and develop the life skills necessary to succeed away from the basketball court.

### The Kinds of Sentences Available

The Sentencing Guidelines authorize a probationary sentence if the applicable guidelines

range is in Zone B of the Sentencing Table and the court imposes a condition or combination of

conditions requiring intermittent confinement, community confinement, or home detention.

USSG § 5B1.1  The defendant may be sentenced to a term of probation of not less than one nor

more than five years. 18 USC § 3561(c)(1); see also USSG § 5B1.2(a).  Intermittent confinement

"means remaining in the custody of the Bureau of Prisons during nights, weekends, or other

intervals of time."  USSG § 5F1.8.

The Guidelines provide that restitution, community service, or both shall be a mandatory

condition of probation for a felony offense unless the court imposes a fine or finds on the record

9

that "extraordinary circumstances" make such a condition "plainly unreasonable." USSG §5B1.3(a)(2). The defendant's offenses are not subject to mandatory restitution. While the court may impose restitution for Count One under 18 U.S.C. § 3663, the Government does not believe a fine is appropriate due to the defendant's financial circumstances. The Government recommends that the court impose 250 hours of community service.

### The Sentencing Range Established by the Guidelines and Pertinent Policy Statements

The Government has previously addressed the Guidelines range and moved for a departure under the Policy Statement in USSG § 5K1.1

### The Need to Avoid Unwarranted Sentencing Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

A probationary sentence does not create an unwarranted sentencing disparity when one considers the proposed amendment to the Drug Quantity Table and the substantial assistance provided by the defendant.

### The Need to Provide Restitution to Any Victims of the Offense

There are no victims of the defendant's offenses.

## IV. CONCLUSION

For Count One and Count Two, the Government requests that the Court impose a
sentence of 30 months of probation with the following conditions: (1) confine the defendant to
the Bureau of Prisons for a total of 5 days from 9:00 AM to 5:00 PM; (2) require the defendant to
obtain sufficient credits to complete his college degree; (3) require the defendant to obtain
gainful employment unless attending school; and (4) require the defendant to perform 250 hours
of community service.  The Government requests that the sentences run concurrently.  The Court
has already entered the Consent Order of Forfeiture, which is part of the defendant's sentence
and shall be included in the judgment under Federal Rule of Criminal Procedure 32.2(b)(4)(B).

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

By: _____ /s/ _____

ANTHONY SALER
D.C. Bar No. 448254
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C.  20530
(202) 252-6971
Anthony.Saler@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on July 21, 2014, I sent a copy of this filing to Dwight Crawley, counsel for the defendant, via email to vadclawyer@gmail.com and via U.S. mail to 601 Pennsylvania Ave., NW, Suite 900-South Building, Washington, DC, 20011.

Anthony Saler
Assistant United States Attorney